IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| **BRIDGET HARDT,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | Civil Action No. 2:07cv105 |
| : | |
| **RELIANCE STANDARD LIFE** : | |
| **INSURANCE CO., et al.,** : | |
| : | |
| **Defendants.** : | |

**OPINION AND ORDER**

Plaintiff Bridget Hardt brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., alleging that Defendant Reliance Standard Life Insurance Company's ("Reliance") denial of her claim for long-term disability benefits was not supported by substantial evidence.  For the reasons set forth below, the parties' Cross-Motions for Summary Judgment (Docket Nos. 19, 31) are **DENIED,** and the case is **REMANDED** for further review.

### I.  Facts and Procedural History

Dan River Inc. ("Dan River") is a textile manufacturer that provides benefits to qualified participants in its Group

Long-Term Disability Insurance Program Plan ("the Plan"). Dan River administers the Plan, and Reliance serves the dual roles of deciding whether a claimant is entitled to benefits and paying for such benefits.

In 2000, Bridget Hardt, an executive assistant to the president of Dan River, began experiencing pain in her neck and shoulders. After seeing several doctors, Ms. Hardt was diagnosed with carpal tunnel syndrome ("CTS"). She underwent surgery on both of her wrists, yet she still suffered from pain. She stopped working on January 23, 2003.

In or about August 2003, Ms. Hardt requested that Reliance pay her long-term disability benefits pursuant to the Plan. Ms. Hardt explained in her claim form that she suffered from numbness, tingling, loss of feeling, and extreme pain in her arms, hands, shoulders, and neck. Reliance provisionally approved her claim, but notified Ms. Hardt that she was required to submit to a functional capacities evaluation ("FCE").

On October 13, 2003, Hand Rehabilitation of Hampton Roads conducted the FCE to assess the impact of Ms. Hardt's CTS and neck pain on her ability to work. The evaluator summarized Ms. Hardt's pertinent medical history as including pain in her neck, left shoulder, parathesias on both hands, and CTS. The evaluator further noted that Ms. Hardt's other previous medical problems included lower back pain, hypertension, and anxiety.

The evaluator ultimately concluded that Ms. Hardt suffered from major limitations in moving her neck, upper extremity pain, decreased right hand dexterity and strength, restricted overhead reach, a restricted ability to squat and kneel, the inability to crawl or to climb ladders, as well as decreased lift, carrying, and push and pull capabilities. The evaluator nonetheless found that Ms. Hardt could perform a sedentary level of work and lift 4 to 5 pounds on occasion with her right hand, and 2 to 3 pounds on a frequent basis. Based on these findings, Reliance denied Ms. Hardt benefits in December 2003. Upon considering Ms. Hardt's administrative appeal, Reliance reversed its decision somewhat and agreed to provide disability benefits for twenty-four months based on Ms. Hardt's inability to perform her current position.

While Ms. Hardt was being evaluated, one of her treating physicians, Gilbert M. Snider, M.D., diagnosed Ms. Hardt with another condition - hereditary small-fiber neuropathy.[1] Ms. Hardt had recently developed a tingling and numbness in her lower extremities that resulted in an icy-hot sensation. During a neurological exam, Dr. Snider found that Ms. Hardt had to keep her fingers mildly flexed because it hurt to fully extend them,

---

[1] Small-fiber neuropathy is a disorder involving small sensory cutaneous nerves (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 2.) Symptoms include tingling, numbness, burning pain or extreme coldness, brief, painful sensations, and loss of temperature sensation. Id.

3

that manipulation of the hands and feet during the examination was unpleasant, and that her motor skills were somewhat limited by pain. He opined that there could be symmetric distal weakness in the lower extremities, but that a detailed examination was difficult due to pain. He concluded that "[t]he painful nature and involvement of pain sensation [indicated that Ms. Hardt suffered from] small-fiber neuropathy," but that it may not show up in nerve conduction studies. (AR 460.)[2]

Ms. Hardt's pain became worse over the following months. In a follow-up visit, Dr. Snider noted that Ms. Hardt had experienced some relief by taking 800 milligrams of Neurontin three times a day, but she continued to have obvious pain and constantly stomped her feet. He recommended increasing her pain medication. The following month, Dr. Snider recommended increasing Ms. Hardt's dosage yet again because she continued to have a burning sensation in her feet during the night. Two months later, Dr. Snider noted that Ms. Hardt was not doing well.

---

[2] Ms. Hardt asserts in Plaintiff's Objection to Defendant's Notice of Filing of Administrative Record and Brief in Support Thereof (Docket No. 24) that the administrative record is not complete because it lacks the Claims Department Administrative Procedures Manual. However, the language in the manual is clear that the steps identified are guidelines and may not apply to every claim. Thus, the failure to abide by the document or include it in the administrative record does not affect the outcome of the decision. For this reason, Ms. Hardt's objection is denied and the manual is excluded.

Although her prescription for Neurontin had doubled, it was not clear that the increased dosage was providing additional relief. Further, the neuropathy caused Ms. Hardt difficulty while walking, and she had a "burning sensation in the feet all the way to the ankles and pain and cramping to the upper 1/3 of her cal[ves]. . . . [H]er feet [were] swollen and it [was] clumsy [for her] to walk on them."  (AR 437.)

While Ms. Hardt was receiving treatment for neuropathy, she applied to the Social Security Administration ("SSA") for disability benefits.  In conjunction with this request, she submitted questionnaires completed by her treating physicians, Julius S. Miller, M.D., and Dr. Snider.  Dr. Miller concluded that Ms. Hardt could not return to gainful employment in her prior position or other sedentary positions because of her neuropathy, combined with her other ailments.  He stated that Ms. Hardt would experience "pain or other symptoms severe enough to interfere with attention and concentration . . . [c]onstantly" (AR 416), that she had limitations on her ability to walk, sit, or stand due to her impairments, and that Ms. Hardt would have difficulty working at a regular job on a sustained basis (AR 415).

Dr. Snider's SSA questionnaire similarly stated that Ms. Hardt would have difficulty working at a regular job on a sustained basis.  (AR 432.)  He opined that Ms. Hardt's

disability would cause her to miss work more than three times a month, placed limitations on her ability to walk, sit, and stand, and that she experienced "pain or other symptoms severe enough to interfere with attention and concentration . . . frequently." (AR 432-33.)  Both doctors also found that Ms. Hardt was not a malingerer.  (AR 415, 431.)  The SSA determined that Ms. Hardt was "disabled" as defined under the Social Security Act because it was impossible for her to return to her former employment or make an adjustment to perform other work.  (AR 74.)

A few months after Ms. Hardt received Social Security disability benefits, Reliance notified her that it would terminate her benefits upon expiration of the twenty-four month period.  Under the terms of the Plan, Ms. Hardt did not qualify for benefits after twenty-four months unless she was totally disabled from all occupations.  Reliance found that Ms. Hardt was not totally disabled from CTS since her magnetic resonance image ("MRI") and electromyogram ("EMG") were both negative.  They also noted that the FCE conducted in 2003 demonstrated that she had sedentary restrictions, but that she could perform a sedentary job.

Once again, Ms. Hardt administratively appealed Reliance's decision.  In connection with her appeal, Ms. Hardt submitted all of her medical records, the SSA questionnaires completed by Drs. Miller and Snider, as well as an updated

questionnaire from Dr. Miller in which he again opined that Ms. Hardt was not a malingerer and would have difficulty working at a regular job on a sustained basis. Before ruling on the appeal, Reliance decided to obtain an updated FCE to determine whether Ms. Hardt had CTS or neck pain. Although Reliance knew that Ms. Hardt had been diagnosed with neuropathy in 2004, Reliance did not mention neuropathy or neuropathic pain in its referral request to the testing company.

Ms. Hardt appeared for a FCE on December 29, 2005. The results of the examination were found to be invalid because Ms. Hardt's effort was submaximal. A second evaluation was scheduled for January 26, 2006, but the results of that evaluation were also found to be invalid for similar reasons. The first evaluator noted that Ms. Hardt "refused multiple tests . . . for fear of nausea/illness/further pain complaints." (AR 48.)

Neither of the inconclusive FCEs were able to support a decision to deny benefits. Rather than have a doctor personally examine Ms. Hardt, Reliance decided to hire a doctor to review some, but not all, of her medical records. The reviewing physician, Michael Leibowitz, M.D., found that Ms. Hardt's prognosis for CTS, neck pain, and neuropathy were either excellent or fair to good. He concluded that Ms. Hardt underwent successful bilateral carpal tunnel release surgery and no longer had any electrophysiological evidence of entrapment of the median

nerves at the carpal tunnels. Dr. Leibowitz also concluded that the prognosis for Ms. Hardt's cervical sprain and strain was good, and that he expected to see improvement in her symptoms over time if she complied with a home exercise program and ergonomic interventions. Finally, Dr. Leibowitz opined that the prognosis for Ms. Hardt's neuropathy was fair to good since she did not suffer from the autonomic nervous component of hereditary small-fiber neuropathy.

Dr. Leibowitz failed to address in his report any of the pain medications prescribed to Ms. Hardt or the effect that her pain had on her ability to perform a job. It is also unclear whether Dr. Leibowitz reviewed the questionnaires completed by Drs. Miller and Snider in which they opined that Ms. Hardt was completely disabled from her conditions. Dr. Leibowitz did not mention any of the questionnaires in his report.

In addition to the peer review performed by Dr. Leibowitz, Reliance had a vocational rehabilitation counselor perform an evaluation to determine what jobs, if any, Ms. Hardt could perform. Based on the results of a residual employability analysis that was performed in 2003, which was based on the FCE performed in 2003, the counselor conducted a labor market study. The study identified eight employment opportunities Ms. Hardt could perform.

By letter dated March 27, 2006, Reliance advised Ms.

Hardt that it had completed its review of her claim file and found that its decision to terminate benefits was correct. Reliance based its decision on the FCEs, the peer review report by Dr. Leibowitz, and the labor market study.

After exhausting her administrative remedies, Ms. Hardt filed this action in the United States District Court for the Eastern District of Virginia, alleging that Reliance violated ERISA by wrongfully denying her long-term disability benefits.

## II. **Analysis**

A. Standards of Review

1. Cross Motions for Summary Judgment

Summary judgment is appropriate when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where both parties have moved for summary judgment, a court should consider "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th. Cir. 2003) (citation omitted). For each motion, "the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion."

Id. (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).  The party who bears the burden of proof on an issue at trial, however, cannot survive summary judgment without forecasting evidence sufficient to sustain his or her burden of proof on that point.  Celotex, 477 U.S. at 327.

### 2. ERISA Standard of Review

This Court already ruled in Hardt v. Reliance Standard Life Insurance Co., 494 F. Supp. 2d 391 (E.D. Va. 2007), that it would review Reliance's denial of long-term disability benefits under a modified abuse of discretion standard of review.  Id. at 392.  This standard is necessary to compensate for the effect of any potential conflict that may arise due to Reliance's dual role as claims reviewer and policy insurer.  Id. at 393.  The modified standard deviates from the usual abuse of discretion review "only to the extent necessary to counteract any influence unduly resulting from the conflict [of interest]."  Ellis v. Metro. Life Ins. Co., 126 F.3d 228, 233 (4th Cir. 1997).  "The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it."  Id.

When reviewing the discretionary decision of a plan

administrator to deny employee benefits, "judicial review . . . is limited to the body of evidence before the administrator at the time it rejected [the] claim." Donnell v. Metro. Life Ins. Co., 165 F. App'x. 288, 294 (4th Cir. 2006) (citing Elliott v. Sara Lee Corp., 190 F.3d 601, 608-09 (4th Cir. 1999)). The "administrator's decision will not be disturbed if it 'is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" Elliott, 190 F.3d at 605 (quoting Brogan v. Holland, 105 F.3d 158, 161 (4th Cir. 1997)).

Substantial evidence is evidence that "a reasoning mind would accept as sufficient to support a particular conclusion." Donnell, 165 F. App'x. at 295 (quoting LeFebre v. Westinghouse Elec. Corp., 747 F.2d 197, 208 (4th Cir. 1984)). It consists of "more than a scintilla but less than a preponderance." Id. However, a decision to deny benefits is neither reasonable nor supported by substantial evidence if an administrator fails to fully consider all ailments affecting the claimant and properly assess their impact. See Guthrie v. Nat'l Rural Elec. Coop. Ass'n Long-Term Disability Plan, 509 F.3d 644, 651-52 (4th Cir. 2007).

To determine whether an administrator's decision was reasonable and based on substantial evidence, the United States Court of Appeals for the Fourth Circuit has formulated a non-exhaustive list of eight factors that a court may consider.

11

Booth v. Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000) (including the language of the plan, whether the decision making process was reasoned and principled, the adequacy of the materials considered to make the decision, and the degree to which they support it).  The relevant factors in this case are the adequacy of the materials considered and whether Reliance's decision was the result of a deliberate, principled, and reasoned process.

B.    Reliance's Motion for Summary Judgment[3]

Reliance asserts that the Court should grant summary judgment in its favor because it did not abuse its discretion when it concluded Ms. Hardt was not totally disabled.  In its letter to Ms. Hardt dated March 27, 2006, Reliance outlined the information upon which it relied to deny her claim:

- a FCE performed on October 13, 2003;
- a FCE performed on December 29, 2005;
- a FCE performed on January 26, 2006;
- a peer review performed by Dr. Michael Leibowitz on March 4, 2006; and
- a vocational evaluation performed on March 10,

---

[3] Ms. Hardt filed a Motion to Strike Defendant's Motion for Summary Judgment and Brief in Support Thereof (Docket No. 25) asserting that Reliance failed to comply with local rules.  The Court will assess the case on its merits.  Thus, the motion is denied.

2006.
(Mem. of Law in Support of Def.'s Mot. For Summ. J. 3-6.)  This listing makes it clear that Reliance's decision to deny benefits was based on incomplete information.  None of the FCEs assessed the impact of neuropathy and neuropathic pain on Ms. Hardt.  Moreover, Dr. Leibowitz's report was itself incomplete.

First, the basis for Dr. Leibowitz's medical conclusions is extremely vague and conclusory.  Without addressing any of the medical records that reflect Ms. Hardt's severe pain, the increasingly strong pain medications prescribed to her, or her decreasing ability to walk, Dr. Leibowitz concluded that the prognosis for her neuropathy was fair to good.  Strikingly, he spent a substantial majority of the diagnosis portion of his report discussing Ms. Hardt's CTS and cervical sprain.[4]  He addressed Ms. Hardt's prognosis for neuropathy in only a cursory manner.

In addition, Dr. Leibowitz failed to cite to any medical

---

[4] The information in the record is mixed regarding Ms. Hardt's recovery from CTS.  Dr. Snider found that Ms. Hardt's surgery on her left and right wrists had provided limited, if any, benefit.  However, he also reported that there had been improvement in the right median sensory amplitudes and the right median motor distal latency indicating successful release of the median nerve in the carpal tunnel.

Given the conflicting reports, it was within Reliance's discretion to deny the claim based on CTS and neck pain only. Booth, 201 F.3d at 345 ("Confronted with this record of conflicting opinion, . . . it is not an abuse of discretion for a plan fiduciary to deny . . . benefits where conflicting medical reports were presented." (quoting Elliott, 190 F.3d at 606)).

evidence to support his conclusion. He merely noted that Ms. Hardt does not suffer from an "autonomic nervous system component." (AR 357.) However, this seems to be a red herring, since Dr. Snider never stated that Ms. Hardt suffered from autonomic symptoms. Autonomic symptoms "include such symptoms as bladder and bowel control problems, blood pressure regulation problems and difficulty with sexual function." (Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J. 23.) Dr. Snider instead diagnosed Ms. Hardt with neuropathy and neuropathic pain. As stated previously, the symptoms of these ailments include tingling, numbness, burning pain or extreme coldness, brief, painful sensations, and loss of temperature sensation. See supra note 1. Dr. Leibowitz mentioned these symptoms in his summary of relevant medical records, yet he made no analysis of them in his diagnosis or prognosis.

As the Fourth Circuit explained in Guthrie, 509 F.3d at 651-52, an administrator's denial of benefits is unreasonable if the administrator fails to consider all conditions from which the plaintiff suffers. In Guthrie, the administrator found that the plaintiff was not disabled due to occupational asthma based on the reports of two pulmonologists. Id. at 652. Yet, the administrator failed to consider the "multiple other problems" from which the plaintiff suffered that neither doctor addressed. Id. The court held the administrator's decision was

unreasonable. Id. at 651-52.

Dr. Leibowitz's report is further inadequate because he failed to address the treating physicians' contradictory medical findings. Reliance does not have to give special weight to Ms. Hardt's treating physicians' conclusions; however, Reliance "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of . . . treating physician[s]." Black and Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). Both of Ms. Hardt's doctors concluded that she was completely disabled, yet Reliance ignored these findings and gave them no weight at all in its decision. Reliance instead relied most significantly on Dr. Leibowitz's report - a report that studiously ignored the diagnoses of these physicians.

Reliance correctly notes that an administrator does not act unreasonably by denying benefits if the record contains "conflicting medical reports." Elliott, 190 F.3d at 606. However, the contradictory evidence must be substantial. Stup v. Unum Life Ins. Co. of Am., 390 F.3d 301, 308 (4th Cir. 2004). Dr. Leibowitz's conclusory and incomplete report does not meet the quantum of evidence that "a reasoning mind would accept as sufficient to support a particular conclusion." Donnell, 165 F. App'x. at 295. "[A]n administrator operating under a conflict of interest does not act reasonably in denying benefits if faced, on the one hand, with substantial evidence of disability and, on the

other, with only tentative and ambiguous evidence that might, or might not, favor denial of benefits." Stup, 390 F.3d at 309.

In addition to relying on an incomplete record, Reliance's decision to deny benefits was also inadequate because it improperly rejected much of the evidence that Ms. Hardt submitted. Reliance found that there was "no support in the medical records for Plaintiff's claim of total disability based on small-fiber neuropathy," (Def.'s Combined Resp. to Pl.'s Mot. for Summ. J. and Rep. in Supp. of Def's Mot. 5), because the diagnosis was based on subjective complaints of pain. Id. at 9.

Reliance wrongly rejected Ms. Hardt's evidence of pain. As explained in Wasson v. Media Gen., Inc., 446 F. Supp. 2d 579, 599 (E.D. Va. 2006) (Payne, J.), the Fourth Circuit does not require that objective evidence be in the form of "an MRI, X-ray or some other tangible or physical demonstration of disability." Although "the professional opinions of doctors, based on physical examination of a patient and the related observations . . . are not the same kind of objective evidence as a CT scan or an MRI, they certainly are objective evidence in the form of medical opinion based on first hand observation." Id. at 594 (citation omitted); see also Hines v. Barnhardt, 453 F.3d 559, 564-66 (4th Cir. 2006)(holding that social security disability applicants may rely exclusively on subjective complaints of pain if diagnosed with a condition that is reasonably likely to cause chronic or

16

acute pain).

Reliance further ignored the substantial amount of pain medication Ms. Hardt's treating physicians had prescribed to her. As explained in Wasson, the medical decision to prescribe pain medication is objective evidence of a painful condition absent proof otherwise.

> While over-medication and fraudulent medication may be a serious and real problem today, there is absolutely no evidence in this matter that [the claimant's] prescriptions result from fraud or over-zealous prescribing physicians. Absent any such evidence, this Court and the [administrator] must accept that [the claimant's] physicians prescribed these drugs because they reasonably believed that [the claimant] suffers from debilitating pain. Those medical decisions and the prescriptions are objective evidence of [the claimant's] painful condition.

Id. at 595. Similar to the claimant in Wasson, there is objective evidence, based upon professional medical opinions and prescriptions for numerous pain medications, that Ms. Hardt suffers from neuropathy and is totally disabled.

Finally, the vocational report lacks probative value because it was based on an outdated FCE that, once again, failed to assess Ms. Hardt's neuropathic pain. "[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record . . . ." Hines, 453 F.3d at 561 (quoting Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989).

In summary, it is clear that Reliance's decision to deny

17

Ms. Hardt long-term disability benefits was not based on substantial evidence. The FCEs did not assess the impact of Ms. Hardt's neuropathy or neuropathic pain on her ability to perform a sedentary job. The peer review report was incomplete and inadequate. The vocational report was based on outdated information. Further, Reliance failed to consider medical records submitted by Ms. Hardt that demonstrated she was suffering from neuropathy. For these reasons, Reliance's motion for summary judgment is denied.

C. Ms. Hardt's Motion for Summary Judgment

Ms. Hardt has also moved for summary judgment based on her claim that Reliance's decision to deny her long-term disability benefits is unreasonable. In essence, Ms. Hardt claims that the medical records, physician questionnaires, and SSA findings[5] are overwhelming evidence that she is totally disabled due to CTS and neuropathy.

Based on the record described above, this Court finds compelling evidence that Ms. Hardt is totally disabled due to her neuropathy. However, this is not the end of the inquiry. The Court must decide whether the evidence is so overwhelming that

---

[5] As acknowledged in the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, the SSA award of disability benefits is not binding on plan administrators. Also, because the Court finds that there is persuasive evidence that Ms. Hardt suffers from a disability without considering the SSA's decision, it does not factor into the Court's determination.

Ms. Hardt is entitled to judgment as a matter of law. While the Court is inclined to rule in Ms. Hardt's favor, it would be unwise to take this step without first giving Reliance the chance to address the deficiencies in its approach. The record demonstrates that Ms. Hardt did not get the kind of review to which she was entitled under applicable law.

It is for this reason that the Court remands this case back to Reliance to fully and adequately assess Ms. Hardt's claim. This case presents one of those scenarios where the plan administrator has failed to comply with the ERISA guidelines and the "proper course of action is to remand to the plan administrator for a 'full and fair review.'" Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 159 (4th Cir. 1993) (citing Berry v. Ciba-Geigy Corp., 761 F.2d 1003, 1007 n.4 (4th Cir. 1985)).

### III. Conclusion

For the aforementioned reasons, the Court **DENIES** Defendant's Motion for Summary Judgment (Docket No. 19), **DENIES** Plaintiff's Motion for Summary Judgment (Docket No 31), **REMANDS** this matter to Reliance, and **INSTRUCTS** Reliance to act on Ms. Hardt's application by adequately considering all the evidence discussed within this Opinion within thirty (30) days of its date

of issuance.  Otherwise, judgment will be issued in favor of Ms. Hardt.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

                                                      /s/  
                                         Walter D. Kelley, Jr.  
                                 UNITED STATES DISTRICT JUDGE

Norfolk, Virginia  
March 27, 2008